UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| FAZOLI'S FRANCHISING SYSTEMS, LLC,  )<br>  )<br>    Plaintiff,   )<br>  )<br>v.   )<br>  )<br>JBB INVESTMENTS, LLC, et al.,  )<br>  )<br>    Defendants.   )<br>  ) | Civil Action No. 5:08-35-JMH<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on several motions.  First, a Motion to Dismiss or, Alternatively, to Transfer [Record No. 4] has been filed by Defendants JBB Investments, LLC, J.T. Barr, Jerry Jones, James Barr, Phillip Barr, and Stacey Barr Wilcox.  Plaintiff has filed a Response, objecting to the motion [Record No. 9].

Additionally, Defendants Craig Boone, Thomas Smith, Keystone Unlimited, LLC, Larry Benzing, CMD Investments, LLC, and 1000 Caraway, LLC, have filed a Motion to Dismiss or, Alternatively, Transfer [Record No. 17].  Plaintiff has filed a Response [Record No. 22] in opposition thereto.

Finally, Lawrence M. Osborn, George W. Osborn, Janice M. Osborn, and George M. Osborn have filed their own Motion to Dismiss or, Alternatively, Transfer [Record No. 20].[1]  Plaintiff has filed

---

[1]  Defendant Osmar Corporation was also a party to this motion.  Osmar Corporation was not, however, represented by

a Response [Record No. 24] in opposition thereto, as well.

The Court being sufficiently advised, Defendants' motions are ripe for decision.[2]

## I. FACTS AND PROCEDURAL BACKGROUND

In the present suit, Plaintiff is seeking monetary damages for alleged breaches of guaranty agreements executed in connection with the operation of various Fazoli's franchises throughout the states of Arkansas, South Carolina, and Georgia. Plaintiff's Complaint was filed on January 8, 2008, and an Amended Complaint was filed on January 11, 2008. The matter was removed to this Court from Fayette Circuit Court on January 25, 2008.

Fazoli's is headquartered in Lexington, Kentucky, and is a franchisor of a network of Italian restaurants located in 31 states. Defendants all own an interest in Pasta Concepts, LLC

---

counsel and failed to obtain counsel when so ordered by the Court [Record No. 21]. As a result, the Motion to Dismiss or, Alternatively, Motion to Transfer was stricken as to Osmar Corporation on April 14, 2008 [Record No. 20]. Ultimately, default judgment was entered as to Osmar Corporation for failure to respond to the First Amended Complaint on April 29, 2008 [Record No. 25].

[2] For ease of reference, the moving defendants JBB Investments, LLC, J.T. Barr, Jerry Jones, James Barr, Phillip Barr, Stacey Barr Wilcox, Craig Boone, Thomas Smith, Keystone Unlimited, LLC, Larry Benzing, CMD Investments, LLC, 1000 Caraway, LLC, Lawrence M. Osborn, George W. Osborn, Janice M. Osborn, and George M. Osborn shall be referred to collectively as "Defendants" for the purposes of this Memorandum Opinion and Order. The Court notes that other parties named as defendants in this matter – Osmar Corporation, GWO Investments, LLC, Weldon Sandberg, Darrell Reed, and David Francis – are not parties to the subject motions.

(hereinafter, "Pasta Concepts"), successor to Pasta Concepts, Inc., which began doing business as a Fazoli's franchisee in April 1995. Pasta Concepts operated six Fazoli's restaurants in Georgia, four in Arkansas, and one in South Carolina under a Fazoli's Franchise Agreement for each location (hereinafter, "Franchise Agreements").

Defendants personally guaranteed Pasta Concepts' performance of the Franchise Agreements by executing Guaranty of Franchisee's Undertakings forms (hereinafter, "Guaranty," individually, or "Guaranties," collectively), which were exhibits to and incorporated into each of the Franchise Agreements with which they were associated. Specifically, they promised to "personally and unconditionally guarantee . . . that Franchisee shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement." There existed multiple Guaranties that guaranteed the performance of Pasta Concepts' locations in Arkansas, South Carolina, and Georgia.

Pasta Concepts has since closed all of its Fazoli's restaurants and, on September 10, 2007, filed for bankruptcy. On September 25, 2005, Pasta Concepts filed its schedules listing Fazoli's as a creditor in the amount of $1,191,668.54. On December 5, 2007, Fazoli's sent letters to Defendants and others requesting that they honor their commitments as guarantors of Pasta Concepts' Franchise Agreements and pay Fazoli's the sums owed by Pasta Concepts.

3

After receiving these letters, on December 12, 2007, six of the 21 guarantors, Defendants JBB Investments, LLC, J.T. Barr, Jerry Jones, James Barr, Phillip Barr, and Stacey Barr Wilcox, filed a lawsuit, *JBB Investments, LLC, et al. v. Fazoli's Franchising Systems, Inc., et al.*, No. CV-2007-813, in the Western District of Craighead County, Arkansas. The plaintiffs in that suit seek a declaratory judgment concerning the rights, status, and legal relations arising from the Guaranty Agreements and Franchise Agreements and the termination thereof, including Fazoli's demand for payment allegedly owed thereunder.

Relevant to the Court's inquiry today, the Franchise Agreement includes a choice of law provision and a provision addressing personal jurisdiction and venue. Paragraph 14.02 provides that:

> This Agreement has been accepted by the Company at Lexington, Kentucky, and shall be governed and construed under and in accordance with the laws of the Commonwealth of Kentucky, which laws shall prevail in the event of any conflict of law.

Paragraph 14.03 provides that:

> Franchisee acknowledges that this Agreement has been negotiated, offered and accepted in the Commonwealth of Kentucky. To the fullest extent permitted by law, Franchisee irrevocably submits to the jurisdiction of the courts of the Commonwealth of Kentucky and the United States District Court for the Eastern District of Kentucky and waives any objection he may have to either the jurisdiction or venue of such forums.

Fazoli's claims that "[v]enue is proper in this Court pursuant

to the terms of the Fazoli's Franchise Agreements between [Pasta Concepts] and Fazoli's . . . , the performance of which has been guaranteed by the Defendants."  [Amend. Compl. at ¶ 23.]  That said, the Guaranties themselves contain no provisions with regard to the waiver of objections to personal jurisdiction, but they do include an affirmative waiver of:

> (a) acceptance and notice of acceptance of the foregoing undertakings; (b) notice of demand for payment of any indebtedness or for performance of any obligations . . . guaranteed [by the Guaranties]; and (c) any right he may have to require that an action be brought against Franchisee or any other person as a condition of his liability.

Fazoli's claims, nonetheless, that "[t]he [d]efendants are subject to personal jurisdiction in Kentucky by virtue of having contracted with Fazoli's in this state and pursuant to the terms of the Fazoli's Franchise Agreements between [Pasta Concepts] and Fazoli's . . ., the performance of which has been guaranteed by the Defendants" as set forth above.  [Amend. Compl. at ¶ 24.]

For the reasons which follow, the Court disagrees and finds that it lacks personal jurisdiction over Defendants.

## II.  STANDARD OF REVIEW

Plaintiff bears the burden of establishing that personal jurisdiction exists over Defendant.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  When a court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal

jurisdiction without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). To defeat a 12(b)(2) motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. *Id.* Importantly, "a court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Id.* (internal citations omitted).

When determining whether personal jurisdiction exists over a defendant, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc.*, 89 F.3d at 1262 (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972)). The Kentucky long-arm statute has been construed to reach the jurisdictional limits permitted by the Constitution; thus, the only analysis necessary is whether the requirements of the Due Process Clause are satisfied. *See Handley v. Ind. & Mich. Elec. Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984).

The crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of

jurisdiction would comport with "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In the Sixth Circuit, courts apply a three-part test to determine if these "minimum contacts" have been met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe*, 89 F.3d at 1263 (internal citations omitted).

Minimum contacts with a forum state cannot be established solely on the basis of a contract between a resident and a nonresident of the state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Other factors, such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" must be considered. *Id.* at 479. This Court will employ the three-part test outlined above to assess the due process issue.

**III. ANALYSIS**

    **A.  Minimum Contacts**

Fazoli's apparently concedes that this Court does not have general personal jurisdiction over Defendants, asserting only that

Defendants are subject to specific jurisdiction, under which "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Accordingly, the Court shall proceed to consider whether Defendants are subject to specific personal jurisdiction, i.e., whether Defendants have sufficient minimum contacts with Kentucky in order to satisfy due process and, if not, whether Defendants have waived any objection, and therefore consented, to personal jurisdiction.

Construing the facts in a light most favorable to Plaintiff, as the Court is required to do, Defendants' contacts with the Commonwealth of Kentucky, as they relate to this matter, are entering into Guaranty Agreements with a Kentucky-based corporation, Fazoli's. These agreements by and between Defendants and Fazoli's, in turn, guaranteed certain Franchise Agreements between a nonresident third-party and Kentucky-based Fazoli's for franchises to be operated in locations other than Kentucky. There is no allegation that the course of dealing involved any interstate travel by Defendants. Thus, at best, the act of signing of the guaranties created an "attenuated contact" with Kentucky that does not constitute purposeful availment. *See LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989); *cf. Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982) (purposeful availment

8

existed where non-resident guarantors of agreement between plaintiff and Kentucky business were shareholders or had other economic interest in Kentucky business operating in Kentucky). In short, Defendants did not purposefully avail themselves of the privilege of transacting business in the Commonwealth and, thus, the first prong of the due process analysis is not met.

Nor is the second prong of the analysis satisfied because it cannot be said that Plaintiff's cause of action arises from Defendants' transaction of business in Kentucky. Defendants did sign a contract with a Kentucky company, but the fact of a contract, without more, is not enough. *See Burger King*, 471 U.S. at 478. Even though physical contact with a forum state is not necessarily required, *see id*. at 476, there was *no* additional contact with Kentucky beyond the agreement with a Kentucky-based corporation on the case presented to this Court.

Finally, the acts or omissions alleged to have occurred do not have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. Again, the only connection that Defendants have with Kentucky is the fact that Plaintiff Fazoli's, a party to the Guaranties, is based in Kentucky. All other acts or omissions involved in this case occurred in Arkansas or in the other states in which the franchises were located. Even though money was exchanged or, perhaps, should have been exchanged under the Franchise Agreements and the

9

Guaranties, it is not enough as "[t]he payment of a sum of money does not qualify as a 'substantial connection,'" *Franklin Roofing, Inc. v. Eagle Roofing & Sheet Metal, Inc.*, 61 S.W.3d 239, 242 (Ky. App. 2001), and imposing jurisdiction on a non-resident defendant without more is unreasonable in this Court's eyes.

Accordingly, the Court finds that there are inadequate minimum contacts between Defendants and Kentucky to satisfy the Constitutional requirement of due process and hail Defendants into this Court.

**B. Waiver**

The conclusion that due process is not satisfied by the contacts alleged does not, however, end this Court's inquiry because the requirement of personal jurisdiction is a right that may be waived. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). There are "a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court," including by agreement in a contract. *Burger King Corp*, 471 U.S. at 473 n.14 (quotations omitted); *see also Rauch v. Day and Night Manufacturing Corp.,* 576 F.2d 697, 700 (6th Cir. 1978); *Angstrom Technologies, Inc. v. Wray,* 382 F. Supp. 2d 895, 897 (E.D. Ky. 2005). Specifically, a party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause. *M/S Bremen v. Zapata*

10

*Off-Shore Co.,* 407 U.S. 1, 11 (1972) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court..."). Here, Plaintiff argues that Defendants' guarantee "that Franchisee shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement" constitutes an adoption of Pasta Concept's waiver by Defendants, but the Court disagrees for the reasons which follow.

Under certain circumstances, courts have held that guarantors can be bound by a forum selection clause in an underlying, guaranteed agreement. *See, e.g., Ameritrust Co. Nat'l Ass'n v. Chanslor,* 803 F. Supp. 893, 896 (S.D.N.Y.1992) (guarantor assumed consent to jurisdiction in New York by virtue of guaranty agreement which unconditionally guaranteed all provisions of underlying agreement and "Notes" to both agreements indicated that forum selection and choice of law clauses applied to both agreements). A court faced with this inquiry must carefully consider the language of the guaranty document alongside the underlying contract. Thus, some courts have reasoned that if an underlying contract contains both consent-to-jurisdiction and choice-of-law clauses, a guaranty containing only the choice-of-law clause does not incorporate the contract's consent-to-jurisdiction clause because "it [is] reasonable to conclude that the parties [have] carefully distinguished between the two documents, intending only that the guarantors be governed by the substantive law of [the

11

chosen forum], not that they be subject to its jurisdiction as well." *Days Inn of Amer., Inc. v. L.A., Inc.*, No. 97 Civ 5476 (JGK), 1998 WL 765192, at *3 (S.D.N.Y. Nov. 3, 1998) (quoting *Lemme v. Wine of Japan Import, Inc.*, 631 F. Supp. 456, 461 (E.D.N.Y. 1986)). Under such circumstances, the *Days Inn* court concluded that it was reasonable to interpret the forum selection clause in the underlying agreement as binding the guarantor where a guarantee, which contained neither a forum selection clause nor a choice of law clause, was so broad that it virtually incorporated the underlying agreement by reference. *Id.* at *10.

Within the Sixth Circuit, the Eastern District of Michigan has determined that, where a party guarantees all "obligations, covenants, representations and warranties of every kind," the language may be considered generally broad enough to encompass a forum selection clause in an underlying, guaranteed Promissory Note. Where the guaranteed Promissory Note contains, however, a choice of law clause and a forum selection clause but the Guaranty only contains a choice of law clause, it is not as clear that the guarantor undertakes to honor the forum selection clause in the Promissory Note. *Gelato Di Roma Intern., Inc. v. Gornall*, No. 07-12178, 2006 WL 2433454, *3-5 (E.D. Mich. Aug. 22, 2006). Looking to Michigan law for guidance as to when a guarantee and an underlying agreement should be read together, the *Gelato Di Roma* court determined that, because the guarantors were not parties to

the underlying promissory note, the promissory note and guarantee could not be construed as one document. *Id.* at \*4 (citing *DVI Capital Co. v. Zelch,* No. 232732, 2003 Mich.App. LEXIS 1742 \*18 (Mich. Ct. App. July 22, 2003) (holding that while documents executed by the same parties, at the same time, and as part of the same transaction, could be read together and construed as one document, the guarantee and lease should not be construed as one document because the guarantor was not a party to the underlying lease). The *Gelato Di Roma* documents were related but "separate legal documents with different provisions," and the district court concluded that the guarantors were not bound by the forum selection clause in the Promissory Note. *Id.*

None of these cases provide binding precedent for this Court, but they are instructive. The Court is concerned with whether each Guaranty purports to adopt the underlying Franchise Agreement wholesale or whether it includes a unique set of terms and conditions by which certain rights of the Guarantors are waived and, thus, those rights not waived are reserved to the Guarantors. In order to determine the nature of the agreement between the Guarantors and Fazoli's, the Court will read the Guaranties and the underlying Franchise Agreements together to determine the intention of the parties while at the same time preserving the integrity of these unique instruments in keeping with Kentucky law. *See, e.g., ABCO-BRAMER , Inc. v. Markel Ins. Co.*, 55 S.W.3d 841, 844 (Ky. Ct.

13

App. 2000) (where underlying contract is incorporated into performance bond, bond and underlying contract are separate agreements but are read together to determine intention of parties as to what and who covered under bond).

In the Guaranties, Defendants agree to pay and "perform each and every undertaking, agreement, and covenant set forth" in the various Franchise Agreements.  The question before this Court is, thus, whether Defendants consented to the jurisdiction of this Court when they agreed to "perform each and every undertaking, agreement and covenant" left unpaid or not performed by the Franchisee, notwithstanding the absence of any forum or venue selection clause in the Guaranties themselves.

In the instant matter, only the Franchise Agreements by and between Fazoli's and Pasta Concepts by Defendants contain an explicit waiver of any objection to the personal jurisdiction of the Kentucky courts.  Defendants are not a party to the Franchise Agreements, and, thus, the Court must be careful to enforce only what Defendants, as guarantors, undertook to do by virtue of their agreements with Fazoli's.  There is no allegation that Pasta Concepts failed or refused to punctually waive personal jurisdiction such that Fazoli's can demand that Defendants are now obligated to rectify that situation by virtue of the Guaranties.

Plaintiff argues, however, that Defendants, having committed to an "unlimited" assumption of Pasta Concept's obligations under

14

the Franchise Agreements, have also agreed to abide by Pasta Concept's consent to Kentucky jurisdiction in their own dealings with Fazoli's. The Court is not persuaded because, in the Guaranties, Defendants did affirmatively waive certain rights:

> (a) acceptance and notice of acceptance of the foregoing undertakings; (b) notice of demand for payment of any indebtedness or for performance of any obligations . . . guaranteed [by the Guaranties]; and (c) any right he may have to require that an action be brought against Franchisee or any other person as a condition of his liability.

In other words, while the Guaranties are silent as to the appropriate forum for disputes and contain no waiver of any objections to jurisdiction in the Commonwealth, Defendants have affirmatively made other waivers with regard to suits against themselves under the Guaranties. In this instance, it is reasonable to conclude that the parties have distinguished between the two documents. The Guaranties might have been drafted so that they waived their objections to personal jurisdiction in Kentucky, but the parties did not include such language. Accordingly, in the absence of waiver or, as discussed above, minimum contacts, this Court may not exercise personal jurisdiction over Defendants, and the matter must be dismissed without prejudice as to these Defendants to proceed elsewhere.

**IV. CONCLUSION**

For all of the reasons noted above, Defendants' Motions to Dismiss for Lack of Jurisdiction shall be granted.

Accordingly, **IT IS ORDERED**:

(1) that Defendants' Motions to Dismiss or, Alternatively, to Transfer [Record Nos. 4, 17, and 20] shall be, and the same hereby are, **GRANTED IN PART** and **DENIED AS MOOT IN PART**;

(2) that those claims in Plaintiff's First Amended Complaint directed to Defendants JBB Investments, LLC, J.T. Barr, Jerry Jones, James Barr, Phillip Barr, Stacey Barr Wilcox, Craig Boone, Thomas Smith, Keystone Unlimited, LLC, Larry Benzing, CMD Investments, LLC, 1000 Caraway, LLC, Lawrence M. Osborn, George W. Osborn, Janice M. Osborn, and George M. Osborn shall be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE**;

(3) that all pending motions shall be, and the same hereby are, **DENIED AS MOOT**.

This the 30th day of September, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge